**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE H.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 4600 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§416(I), 423, 1381a, 1382c, almost five years ago. (Administrative Record (R.) 283-292). She claimed that she has been disabled since May 15, 2012, due to post traumatic stress disorder, borderline personality disorder, depression and anxiety, insomnia, and agoraphobia. (R. 322). Over the next three and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on August 5, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on September 24, 2020. [Dkt. #6]]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

# I.

## A.

Plaintiff was born on June 23, 1989, making her just 22 years old when she alleges she became unable to work. (R. 283). In her young working life, from 2006 through 2016, she's had a few jobs, working as a nurse's assistant, in retail, and at an auto parts warehouse in distribution. (R. 329).

She claimed that her depression either kept her in bed all day, or she didn't sleep. She got angry for no reason at all, and she did not like "large" crowds, which she defined as more than three people. (R. 101). Her medications made her sleepy, but they did help – although she still had bad days four days a week. (R. 112). She said she had to quit her job before she was fired because she took off so many days because of depression and anxiety and PTSD. (R. 103). At another point in the record, she claimed she quit because she got mad. (R. 564). She started to look for work, but decided there was nothing she could do (R. 103). She said she was 5'2" and 222 pounds (R. 104). She was a smoker and used marijuana regularly. (R. 773, 899, 900, 907, 947).

The medical record in this case is, as these records generally are, fairly large. It spans a seven-year period, from 2012 through 2019, and covers about 900 pages. Much of that evidence, as it generally is, is irrelevant or does not indicate that plaintiff is unable to work. Indeed, the plaintiff focuses on treatment notes covering only about two weeks of the seven years. [Dkt. #14, at 3-4]. That's understandable, because it has to be said that throughout much of the record, psychiatric notes are unremarkable.

On July 12, 2016, plaintiff sought a medication refill. It was noted she had a history of depression and past suicide attempts, but symptoms were controlled and much improved. (R. 739).

Mood, affect, behavior, judgment and thought content were all observed to be normal. (R. 740). On September 8, 2016, plaintiff sought treatment at Sinai Psychiatry & Behavioral Health indicating that her medications were no longer effective. (R. 508). She was taking Lexapro, Buspar, Klonopin, and Trazadone. (R. 509). She reported symptoms of depressed mood, elevated mood, decreased pleasure, "zoning out", crying spells, and fatigue. (R. 508). She reported passive suicidal ideation two weeks prior, and an attempt four years prior. (R. 508). She reported that she was abused as a child. (R. 510). The loss of her father was significant to her. (R. 510). Upon examination mood was dysphoric, affect was sad, speech was slow, thought process was logical. She was attentive and fund of information was adequate. (R. 513). She appeared sleepy. (R. 513). Diagnosis was "other bipolar disorder." (R. 515). On September 21, 2016 exam was essentially normal: normal mood and affect, normal behavior, normal judgment and thought content. (R. 643).

On September 28, 2016, plaintiff went to the Pilsen Wellness Center, reporting symptoms of anxiety and depression, with brief manic episodes. (R. 526). Alcohol and/or drug use were noted to be issues with treatment. (R. 531). Plaintiff was working part-time on the sales floor of a large retail store. (R. 533). Contrary to her report earlier in the month, plaintiff claimed that she was taking no prescription medication for her symptoms. (R. 535-36). Plaintiff related that her mother had been physically and emotionally abusive. (R. 539). She lived with her sister, her boyfriend, and their child; the arrangement was comfortable and supportive. (R. 540). Upon examination, attention was appropriate, mood was depressed and anxious, affect was appropriate, thought process was logical, perception was normal, judgment was fair, memory was intact, insight was good. (R. 543). Symptomology was consistent with bipolar disorder with moderate anxious distress. (R. 549). A sixth month treatment plan was established, including monthly case management and community

3

support, and weekly individual therapy. (R. 553).

On December 13, 2016, plaintiff's mood, affect, behavior, judgment, and thought content were all observed to be normal. (R. 748). Depression was controlled with medication, and anxiety was much improved. (R. 747). On January 11, 2017, plaintiff went in for medication management. Her mood was sad and her affect blunt, but memory, attention and concentration were normal, thought was logical and linear, and insight and judgment were fair. (R. 785-86). On January 18, 2017, plaintiff underwent a consultative psychological examination in connection with her application for benefits. (R. 558-561). Plaintiff appeared disorganized, but grooming was good, speech was soft, eye contact was good. (R. 558). Plaintiff reported an extensive history of trauma and, contrary to her visits with her treatment providers, claimed she was abused by both her mother and father. (R. 558). Plaintiff said she was undergoing intensive psychotherapy with a possible transition to a partial hospitalization program. (R. 559). She said she was sober, but had a long history of illegal drug use. (R. 559). She was sometimes tearful. (R. 560). Thought process was linear and goal-oriented. Orientation was normal, immediate memory was intact. Recent and remote memory were intact. Fund of knowledge was adequate. (R. 560). The examiner diagnosed plaintiff with chronic and persistent PTSD, major depressive disorder, recurrent, moderate, and substance abuse dependence in remission. (R. 561).

From March 15-17, 2017, plaintiff was hospitalized at Sinai Hospital for depression and suicidal ideation. (R. 708, 777). Plaintiff alleged to have taken pills and was brought in by her boyfriend. (R. 689). Plaintiff wanted additional medications and became angry when she was denied them. (R. 689). Plaintiff denied any previous hospitalizations. (R. 689). Drug screen was positive for opioids and benzodiazepines. (R. 690). Mood was depressed, affect was irritable,

4

attention and concentration were fair, insight and judgment were poor. (R. 690). Diagnosis was major depression, recurrent, chronic PTSD, and cannabinoid use disorder. (R. 690).

From March 22-30, 2017, plaintiff was hospitalized at Chicago Behavioral Hospital for schizoaffective disorder, PTSD, and anxiety. (R. 562-566). Upon admission, she was noted to be very depressed, anxious, irritable, and disengaged, and reported homicidal ideation toward her mother who lived in Kentucky, who had just stopped supporting her financially. (R. 564). Plaintiff reported that she had quit her last job because she was "getting mad." (R. 564). She said she had attempted suicide "a lot." (R. 564). Upon discharge, her mood was observed to be slightly anxious, her affect slightly restricted, and her insight and judgment were fair. (R. 562). She denied suicidal and homicidal ideation. (R. 562). Attention, memory, insight, and judgment were fair. (R. 562). At a follow-up on April 24, 2017, plaintiff's affect was noted to be blunt, but judgment and thought content were normal.

On May 4, 2017, examination notes indicated plaintiff exhibited normal mood and affect, normal behavior, and normal insight and judgment; focused and to the point. (R. 783). On May 7, 2017, plaintiff's mood was sad and her affect blunt, but memory, attention and concentration were normal, thought was logical and linear, and insight and judgment were fair. (R. 788). On May 30, 2017, mood was depressed, affect blunted, thought process logical, cognition normal, insight normal, judgment within normal limits. (R. 794).

Plaintiff's mood and affect were normal, behavior was, normal, and judgment was as well on July 31, 2017. (R. 870). On October 2, 2017, plaintiff's mood, behavior, judgment, and thought content were again all normal. (R. 900). Again, on March 20, 2018, plaintiff's mood, affect, behavior, judgment, and thought content were all normal. (R. 908). On May 1, 2018, psychiatric

5

notes indicated all findings were all normal. (R. 948). Mental health was well-controlled on medications. (R. 1175). And, examination was normal again on October 26, 2018 (R. 1207), on December 1, 2018 (R. 1216), and on December 8, 2018. (R. 1230).

On January 26, 2019, plaintiff went to Holy Cross emergency department with right upper quadrant pain. Her history of depression, PTSD, obesity, were noted. She claimed to be arguing and separating from her husband and staying with a friend. (R. 1238). Mood was depressed, and she was anxious about her husband. Thought process and content were normal. Behavior was calm and appropriate, and attention, concentration, judgment, and insight were all intact. (R.1241).

**B.**

After two administrative hearings at which plaintiff, represented by counsel, testified, along with two vocational experts and a medical expert, the ALJ determined the plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"); personality disorder; depression; bipolar disorder; and alcohol abuse disorder. (R. 20). The ALJ also found that plaintiff's obesity did not result in any limitations and was not a severe impairment. (R. 20). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings covering mental impairments. (R. 20-]21). In understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself, the ALJ found the plaintiff had moderate limitations. (R. 21-25).

After summarizing the medical record, the ALJ then determined that plaintiff could "perform a full range of work at all exertional levels but with the following nonexertional limitations: she must

avoid all exposure to moving machinery and unprotected heights; she can perform work involving only simple, routine, repetitive tasks, involving only simple work-related decisions or judgments; she must work in a low-stress job, defined . . . as work in an environment free of fast-paced production requirements, but which may involve end of the day production requirements; she can have only occasional interaction with the general public, co-workers, and supervisors; she cannot perform work involving tandem tasks; and she can only work in an environment with few, if any, changes in the work setting." (R. 25).

The ALJ also determined that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 26). The ALJ explained that treatment notes regularly indicate the claimant exhibited intact memory, with appropriate thought processes and content, with fair to good judgment and insight; that she was cooperative with her providers, and the evidence indicates she is capable of forming relationships; and that she has intact concentration and attention. (R. 26-27).

As for medical opinions, the ALJ gave the opinions from the state agency reviewing physicians that plaintiff would be able to perform simple, routine tasks at a reasonable pace; would be unable to perform complex or detailed tasks; could only occasionally have contact with the public; and would need to work in a low-stress environment involving infrequent workplace changes and no forced-pace work good weight, as they were consistent with and supported by the longitudinal evidence of record. (R. 27). But the ALJ did find that certain evidence required additional limitations regarding exposure to hazardous machinery, unprotected heights, and performance of

tandem tasks. (R. 27). The ALJ also gave the medical expert's opinion good weight, finding it was generally consistent with the medical evidence of record. Again, however, the ALJ found the foregoing additional limitations were warranted by the medical evidence. (R. 28).

Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff could not perform her past relevant work but could perform other work that existed in significant numbers in the national economy. Examples of such work were: laundry laborer (DOT 361.687-018; 58,000 jobs); photocopying machine operator (DOT 207.685-014; 50,000 jobs); or cleaner housekeeper (DOT 323.687-014; 325,000 jobs). (R. 29). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 29-30).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Of course, this is a subjective standard: one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare. The subjectivity of the requirement makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). Given the record, the ALJ has done at least enough here.

9

**III.**

In the main, the plaintiff feels the ALJ focused too much on the many normal psychiatric exams and treatment notes to the exclusion of the handful of times, perhaps twice in March 2017 and once in January 2019, where mental health providers noted episodes during which plaintiff's symptoms would have made her unable to work. [Dkt. #14, at 10]. While the plaintiff tendentiously characterizes the ALJ's view of the record as "skewed" [Dkt. #14, at 8], in truth, it is the plaintiff's view – which ignores the fact that the vast majority of the medical evidence is unremarkable – that is skewed. While she has been diagnosed with depression and PTSD and has had a handful of severe episodes over the course of the last several years, it must be remembered that severe depression in not the blues. *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). It is also true that a diagnosis is not necessarily a disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Plaintiff bears the burden to prove she is disabled by producing medical evidence. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021);*Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010).

It's clear from the record and from plaintiff's brief that there is not much to detract from the ALJ's Opinion, other than the plaintiff's argument that the ALJ ought to have weighed the evidence differently than he did. But "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020)("Notably absent from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination."); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair

does not make it so. Charges require specific allegations and then proof. We have neither here."). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018). It is up to the ALJ to review the record as a whole and weigh the good days against the bad. *Gedatus*, 994 F.3d at 903(". . .the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence."); *Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020)(ALJ properly weighed record which included severe episodes requiring hospitalizations); *Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020)(ALJ properly considered emergency-room visits and hospitalizations as isolated incidents). Not even the plaintiff can honestly say that with the medical records on the scale, the needle doesn't point to the side of normal findings dominating.

It is true that the Seventh Circuit has warned against ALJs relying too much on normal, brief mental status examinations because such notations only describe how an individual presented at a particular appointment. *Gerstner v. Berryhill*, 879 F.3d 257, 261-262 (7th Cir. 2018). But, this is not a case where the ALJ ignored diagnoses of depression and anxiety as in *Gerstner*. And, again, this is not a record where there are alternating good and bad days; it's not nearly half and half as the court hypothesized in *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)("Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.). It is not a record where the ALJ focused on just "a number of hopeful" remarks. *Compare Bauer*, 532 F.3d at 609. The findings and observations are, in the main, unremarkable, at appointment after appointment. If plaintiff truly were, as she alleges, confined to bed most of every week or "socially crippled", the record would not tip so heavily in favor of "normal" findings.

That raises another problem with the plaintiff's brief and with the record. In view of what,

again, has to be said, are findings overwhelmingly weighted to the unremarkable or normal side of the scale the plaintiff focuses far too heavily on her testimony. But the medical record is what it is and cannot be ignored: examination after examination with mostly normal results. A plaintiff can't apply for benefits and dismiss the bulk of her medical record as insignificant. *See, e.g., Winsted v. Berryhill*, 923 F.3d 472, 478-79 (7th Cir. 2019); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Elder v. Astrue*, 529 F.3d 408, 413, 416 (7th Cir. 2008).

Plaintiff also complains that the ALJ assigned great weight to non-examining state agency consultants who, like him, assessed moderate limitations in all areas. [Dkt. #14, at 11-12]. This argument is certainly a difficult one to follow. First, the plaintiff argues that the ALJ offered no reason to assign great weight to the opinions, accepting them only because they aligned with his own. [Dkt. #14, at 11-12]. But that's not true. The ALJ very clearly explained that the medical opinions were consistent with and supported by the longitudinal evidence of record, which the ALJ had discussed at length. (R. 27). It was entirely proper for the ALJ to rely on those opinions, especially as there is no contrary opinion in the record. *See Murphy v. Astrue*, 454 F. App'x 514, 519 (7th Cir. 2012); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008). More and more, we see arguments from disability plaintiffs that are based on careless readings of the record or the ALJ's opinion. This case is another example. *See, e.g., Michael K. v. Saul*, 2021 WL 1546426, at *8 (N.D. Ill. 2021); *Michael K. v. Saul*, 2020 WL 7337821, at *7 (N.D. Ill. 2020); *Thomas K v. Saul*, 2020 WL 6565228, at *7 (N.D. Ill. 2020); *Ronald R. v. Saul*, 2020 WL 3843591, at *6 (N.D. Ill. 2020); *Shaun R. v. Saul*, 2019 WL 6834664, at *4, 8 (N.D. Ill. 2019); *Migdalia M v. Saul*, 414 F. Supp. 3d 1126, 1136 (N.D. Ill. 2019); *Bertha M. v. Saul*, 395 F. Supp. 3d 963, 973 (N.D. Ill. 2019). It's unclear whether this is a product of too large a caseload or pressing poorer claims for benefits into federal court, but in

either case, it is not a road to remand.

Plaintiff's brief continues to grasp at straws when it accuses the ALJ of "playing doctor," because he determined that the evidence supported additional "moderate" limitations. [Dkt. #14, at 12]. But affording a plaintiff the benefit of the doubt and allowing for additional limitations is not "playing doctor" and certainly provides no cause for a remand. *See, e.g., Gedatus*, 994 F.3d at 904 (7th Cir. 2021)("The ALJ gave great weight to the state-agency physicians' opinions that she could perform light work, with certain limits. Indeed, the ALJ assessed more limits than any doctor did.").

Finally, we come to those moderate limitations the ALJ found. The plaintiff thinks they should have been marked or perhaps extreme, but she bases this entirely on her allegations. [Dkt. #14, at 12-13]. If she feels more severe limitations are in order, she had to have cited to medical evidence to support them; she does not. *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016).[2] The plaintiff then points out that the Seventh Circuit has long held that limiting an individual, in an RFC assessment, to simple, repetitive – i.e. unskilled -- work does not necessarily address moderate deficiencies of concentration, persistence and pace, citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). But the Seventh Circuit has recently said otherwise:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1. . . . "fair" in ordinary usage does not

---

[2] In a similar vein, the plaintiff attacks the findings of the medical expert because the limitations the expert arrived at based on the medical evidence were not marked or extreme. [Dkt. #14, at 14-15]. Again, plaintiff's allegations cannot, alone, provide the basis for findings of marked or extreme limitations, any more than they can provide entitlement to disability benefits. Plaintiff seems to wager all on a very few isolated instances: a single mention of "bizarre behavior" on one day in January 2019, or issues with alertness and concentration on another(R. 564), plaintiff's allegations of her desires to do more things or make more friends at an initial evaluation (R. 546-547), can't outweigh the overall record. And, as the medical expert explained, that is what has to be reviewed and considered.

13

mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

*Pavlicek v. Saul*, 2021 WL 1291614, at *4 (7th Cir. 2021).

Moreover, the ALJ's RFC went beyond just "simple, repetitive, unskilled work." The ALJ limited plaintiff to simple, routine, repetitive tasks, involving only simple work-related decisions or judgments; she must work in a low-stress job, defined . . . as work in an environment free of fast-paced production requirements, but which may involve end of the day production requirements; she can have only occasional interaction with the general public, co-workers, and supervisors; she cannot perform work involving tandem tasks; and she can only work in an environment with few, if any, changes in the work setting." (R. 25). Importantly, the ALJ – with a bit of an enhancement – drew these limitation from the opinions of *three* medical experts, which the Seventh Circuit has found acceptable time and again. *See, e.g., Simons v. Saul*, 817 F. App'x 227, 232 (7th Cir. 2020); *Bruno v. Saul*, 817 F. App'x 238, 242 (7th Cir. 2020); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020); *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002). The ALJ committed no reversible error in crafting his RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision denying benefits is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/14/21